Citation Nr: 1313637 
Decision Date: 04/24/13 Archive Date: 05/03/13

DOCKET NO. 10-43 521 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for headaches. 

2. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a low back disorder. 

3. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a bilateral leg and ankle disorder. 

4. Entitlement to a rating in excess of 10 percent for a facial scar. 


REPRESENTATION

Appellant represented by: Lavan & Neidenberg, P.A. 



ATTORNEY FOR THE BOARD

Jarrette A. Marley, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1975 to December 1977. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision by the St. Louis, Missouri Department of Veterans Affairs (VA) Regional Office (RO). 

In his October 2010 VA Form 9 (Substantive Appeal), the Veteran requested a hearing before a member of the Board. However, in May 2012 correspondence, the Veteran withdrew his request for a hearing. 

In March 2013, the Veteran submitted additional evidence with a waiver of RO review. 

Finally, because the record shows that the Veteran was denied entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) in an April 2010 rating decision during the pendency of the appeals addressed herein. The Veteran has not expressed disagreement with the denial of TDIU and has not subsequently alleged unemployability due to his two service-connected dermatology disabilities. Therefore, the Board has not included the issue of entitlement to TDIU as an issue on appeal. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 

The merits of the Veteran's claims for headaches, low back disorder, and a bilateral leg and ankle pain disorder are addressed in the REMAND portion of the decision below and are REMANDED to the Department of Veterans Affairs Regional Office.



FINDINGS OF FACT

1. An October 2006 Board decision denied the Veteran service connection for headaches, based essentially on findings that the complaints in service were attributed to a cold syndrome or the flu; no chronic headache or neurological disorder was identified; and there was no evidence of a nexus between the Veteran's current headaches and his service. 

2. Evidence received since the October 2006 Board decision relates to an unestablished fact necessary to substantiate the claim for headaches, and raises a reasonable possibility of substantiating the claim. 

3. An October 2006 Board decision denied the Veteran service connection for a low back disorder, based essentially on a finding there was no evidence of an underlying disability. 

4. Evidence received since the October 2006 Board decision relates to an unestablished fact necessary to substantiate the claim for a low back disorder, and raises a reasonable possibility of substantiating the claim. 

5. An October 2006 Board decision denied the Veteran service connection for a bilateral leg and ankle disorder, based essentially on a finding there was no evidence of an underlying disability. 

6. Evidence received since the October 2006 Board decision relates to an unestablished fact necessary to substantiate the claim for a bilateral leg and ankle disorder, and raises a reasonable possibility of substantiating the claim. 

7. The Veteran's facial scar is manifested by minimal sensitivity to pressure; it is not characterized by visible or palpable tissue loss and either gross distortion or asymmetry of one feature or paired set of features, or displays two or three characteristics of disfigurement, including being 5 or more inches in length or at least one-quarter inch wide, elevation or depression of the scar on palpation, adherence to underlying tissue, hypo- or hyper-pigmentation in an area exceeding six square inches, missing underlying soft tissue in an area exceeding six square inches, abnormal skin texture in an area exceeding six square inches, or indurated and inflexible skin in an area exceeding six square inches; and is not shown to cause any limitation of function. 


CONCLUSIONS OF LAW

1. The October 2006 Board decision which denied service connection for headaches, a low back disorder, and a bilateral leg and ankle disorder, is final. 38 U.S.C.A. § 7104 (West 2002). 

2. Evidence received since the October 2006 Board decision is new and material, and the claims of service connection for headaches, a low back disorder, and a bilateral leg and ankle disorder, are reopened. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.159(a) (2012). 

3. The criteria for an evaluation in excess of 10 percent for a facial scar are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 4.118, Diagnostic Codes 7800, 7804, 7805 (2012). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

In this decision, the Board reopens the Veteran's claims for service connection for headaches, a low back disorder, and a bilateral leg and ankle disorder, and remands them for further development. As such, no discussion of VA's duty to notify and to assist as to those matters is necessary. 
Regarding the Veteran's claim for an increased rating for his facial scar, in a claim for increase the VCAA requirement is notice of the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The Veteran was advised of VA's duties to notify and assist in the development of his claim. A July 2009 letter explained the evidence necessary to substantiate his claim, the evidence VA was responsible for providing, and the evidence he was responsible for providing. A January 2012 supplemental statement of the case readjudicated the matter after additional development was completed. The Veteran has not alleged that notice in this case was less than adequate. See Shinseki v. Sanders, 556 U.S. 396 (2009) (discussing the rule of prejudicial error). 

The RO also provided assistance as indicated under the facts and circumstances of the case. The Veteran's service treatment records and postservice treatment records are associated with the claims file. The Veteran has also been afforded appropriate VA examination in regard to his increased rating scar claim. October 2009 and December 2011 VA examinations assessed the current severity of the Veteran's service-connected facial scar, soliciting symptomatology of the disability from the Veteran and noting all findings necessary for a proper adjudication of the matter. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (VA must provide an examination that is adequate for rating purposes). 

Based on a review of the claims file, the Board finds that there is no indication in the record that any additional evidence relevant to the issue of the Veteran's increased rating scar claim is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Accordingly, the Board finds that the duty to notify and the duty to assist have been satisfied and will proceed to the merits of the Veteran's appeal. 


Analysis

New and Material Claims

In an October 2006 Board decision, the Veteran was denied service connection for headaches, in part, on the basis that there was no evidence of a nexus relationship between his current complaints of headaches and his service. The Board decision also denied service connection for a low back disorder and for a bilateral leg and ankle disorder on the basis that there was no evidence of an underlying disability. The October 2006 Board decision is final. 38 U.S.C.A. § 7104 (West 2002). 

In June 2009, the Veteran sought to reopen his claims, and in the November 2009 rating decision on appeal, the RO denied the Veteran's claims for service connection, finding that the evidence received since the prior final October 2006 Board decision was not new and material. 

If new and material evidence is presented or secured with respect to a claim that has been disallowed, VA must reopen the claim and review its former disposition. 38 U.S.C.A. § 5108. "New" evidence means existing evidence not previously submitted to agency decision makers. "Material" evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). In determining whether evidence is "new and material," the credibility of the new evidence must be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

The provisions of 38 U.S.C.A. § 5108 require a review of all evidence submitted by or on behalf of a claimant since the last final denial on any basis to determine whether a claim must be reopened. See Evans v. Brown, 9 Vet. App. 273 (1996). 

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 24 Vet. App. 110 (2010). Moreover, in determining whether this low threshold is met, consideration need not be limited to consideration of whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead one should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA's duty to assist or through consideration of an alternative theory of entitlement. Id. at 118. 

Regarding the claim for service connection for headaches, the evidence added to the record since the October 2006 Board decision includes post-service VA treatment records wherein the Veteran has reported his headaches are related to his service and that they are a residual of a head injury as reflected by his service-connected facial scar. In addition, the evidence includes an October 2009 VA scars examination report that provided a diagnosis of a laceration of the forehead with surgical repair and residual headaches. The Veteran's statements are presumed credible for the limited purpose of reopening the previously disallowed claim. Justus v. Principi, 3 Vet. App. 510 (1992). When considered together with the October 2009 VA scars examination report, such evidence relates to an unestablished fact necessary to substantiate the claim for headaches, and are neither cumulative nor redundant. As the Board finds that the additional evidence is new and material, the claim of service connection for headaches is reopened. 

Regarding the claim for service connection for a low back disorder, the evidence added to the record since the October 2006 Board decision includes post-service VA and private treatment records wherein the Veteran has complained of back pain since service and diagnoses of mild degenerative changes at L4 and L5 on x-ray and degenerative joint disease of the lumbar spine. The Veteran's statements are presumed credible for the limited purpose of reopening the previously disallowed claim. Justus, 3 Vet. App. at 513. When considered together with post-service treatment records, such evidence relates to an unestablished fact necessary to substantiate the claim for a low back disorder, and are neither cumulative nor redundant. As the Board finds that the additional evidence is new and material, the claim of service connection for a low back disorder is reopened. 

Finally, regarding the claim for service connection for a bilateral leg and ankle disorder, the evidence added to the record since the October 2006 Board decision includes post-service VA and private treatment records wherein the Veteran has complained of bilateral knee pain since service, x-ray evidence of abnormality of the right tibia, and findings of crepitus in both knees as well as the use of knee braces. The Veteran's statements are presumed credible for the limited purpose of reopening the previously disallowed claim. Justus, 3 Vet. App. at 513. When considered together with post-service treatment records, such evidence relates to an unestablished fact necessary to substantiate the claim for a bilateral leg and ankle disorder, and are neither cumulative nor redundant. As the Board finds that the additional evidence is new and material, the claim of service connection for a bilateral leg and ankle disorder is reopened. 

Increased Rating Claim

Initially, the Board notes that it has reviewed all of the evidence in the Veteran's claims file and in Virtual VA (i.e., VA's electronic data storage system), with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (VA must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the veteran). 

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. The percentage ratings in VA's Schedule for Rating Disabilities (Rating Schedule) represent as far as can practicably be determined the average impairment in earning capacity resulting from such disabilities and their residual conditions in civil occupations. 38 C.F.R. § 4.1. 

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability more closely approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

Where entitlement to compensation has already been established and increase in disability is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, "staged" ratings are appropriate where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Scars of the head, face or neck are rated by application of Diagnostic Codes 7800 through 7805. Under Code 7800, a 10 percent rating is warranted for scars of the head, face or neck with one of the following characteristics of disfigurement: scar 5 or more inches (13 or more cm.) in length, scar at least one-quarter inch wide at its widest part, surface contour of scar elevated or depressed on palpation, scar adherent to underlying tissue, skin hypo- or hyper-pigmented in an area exceeding six square inches, skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches, underlying soft tissue missing in an area exceeding six square inches, or skin indurated and inflexible in an area exceeding six square inches. A 30 percent rating is warranted when there is when there are at least two characteristics of disfigurement or visible or palpable tissue loss and either gross distortion or asymmetry of one feature or paired set of features. Under Code 7804, a 10 percent rating is warranted for one or two scars that are painful or unstable on examination. A 20 percent rating is warranted when there are two or three scars that are painful or unstable on examination. Under Code 7805, scars are rated based on the limitation of function of the affected part. 38 C.F.R. § 4.118, Diagnostic Codes 7800-7805 (2012).

Historically, a March 2003 rating decision granted the Veteran service connection for a facial scar, rated 10 percent, effective August 27, 2002. 

This claim for increase was received in June 2009. The criteria for rating scars were revised in 2008. The revised criteria apply to all claims filed on or after October 23, 2008. Therefore, the revised criteria are for application in the instant case.

On October 2009 VA scar examination, the Veteran reported that he sustained a laceration of the forehead during service when he ran into a concrete pillar. It was noted that the scar, linear and measuring 3.7 x 0.1 cm, is located at the hairline above the right eye on the forehead. Palpation of the scar did not elicit any tenderness or complaints of pain. The skin was intact. The scar is superficial and mobile, nonadherent to underlying tissue. There were no limitations of movement of the skin of the forehead with facial grimacing, smiling, or wrinkling of the forehead. There was no inflammation, edema, keliod or induration on palpation. It is not elevated or depressed. The texture of the scar is consistent with the surrounding skin texture, and the color of the scar is consistent with the surrounding skin color. There is no loss of soft tissue under the scar and there is no distortion or asymmetry. The examiner noted that the scar was very difficult to see and could only be seen with reflection of the light at an angle to the Veteran's head. 

On December 2011 VA scar examination, the Veteran reported no significant change since his prior examination. He indicated it remained minimally hypersensitive to pressure, particularly with getting a haircut. On physical examination, a lateral, horizontal scar (3.5 x 0.1 cm) is noted at the hairline on the right forehead superior to the eye margin. It is minimally visible. It is freely moveable, non-fixed, non-keloid, and non-draining, without color change to appearance. There is no induration or dimpling. There are no raised characteristics. There is no loss of neuro-sensation in the area to light touch and pain sensation. There is no motor loss, and no disruption of eyelid function or motor function of the forehead. The examiner specifically found that there was no elevation, depression, adherence to underlying tissue or missing underlying tissue. There is no abnormal pigmentation of the scar. There is no distortion of facial features, asymmetry, or visible or palpable tissue loss. There is also no limitation of function due to the scar, including ability to work. 

The findings outlined above provide evidence against this claim, clearly indicating that the criteria for a rating in excess of 10 percent are not met for any period of time under consideration. None of the above-outlined characteristics of disfigurement has been noted on examination (much less two or more): the scar is less than 5 inches; it is less than one-quarter inches wide at its widest part; the surface contour of the scar is not elevated or depressed on palpation; it is not adherent to underlying tissue; it is not hypo- or hyper-pigmented; the skin texture is not abnormal; there is no underlying soft tissue missing; and the skin is not indurated and inflexible. Significantly, the Veteran on December 2011 VA examination reported that the scar was manifested by minimal hypersensitivity to pressure, consistent with, at worst, a 10 percent rating under Diagnostic Code 7804 for a painful scar. There is no evidence of two or three additional unstable or painful scars to warrant a disability rating in excess of 10 percent under Diagnostic Code 7804. There is also no limitation of function due to the scar to warrant consideration under Diagnostic Code 7805. As the criteria for the 10 percent rating currently assigned encompasses the greatest degree of severity of the Veteran's scar at any time during the appeal period, the Board finds that "staged" ratings are not warranted. The preponderance of the evidence is against this claim; accordingly, the benefit of the doubt doctrine does not apply. The claim must be denied. 

The Board has also considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis. Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is, thus, found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating. 

The Board finds that the rating criteria contemplate the symptomatology as reported by the Veteran concerning his scar. As noted above, the Veteran has reported minimal hypersensitivity to pressure, particularly with getting a haircut. Under Thun, the initial step in a determination as to whether there should be referral for extraschedular consideration is a comparison between the levels of symptoms shown with the schedular criteria for rating the disability. After a review of the evidence and the Veteran's claims file, the medical evidence fails to show anything unique or unusual about the Veteran's scar. No symptoms have been described that would render the schedular criteria inadequate; in fact, pain/sensitivity of a scar is specifically contemplated by the schedular rating criteria. The Board does not find that the Veteran's scar interferes with his work beyond the interference contemplated by the currently assigned 10 percent rating. Notably, on the recent December 2011 VA scar evaluation, it was found that the scar did not have any functional impact on his ability to work. See 38 C.F.R. § 4.1. Consequently, the Board finds that the schedular criteria are not inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). Therefore, referral for consideration of an extraschedular rating is not warranted. 


ORDER

New and material evidence having been presented, the Veteran's claim of service connection for headaches is reopened, and to this extent, the appeal is granted. 

New and material evidence having been presented, the Veteran's claim of service connection for a low back disorder is reopened, and to this extent, the appeal is granted. 

New and material evidence having been presented, the Veteran's claim of service connection for a bilateral leg and ankle disorder is reopened, and to this extent, the appeal is granted. 

An evaluation in excess of 10 percent for a facial scar is denied. 


REMAND

As indicated above, the Veteran seeks service connection for headaches, a low back disorder, and a bilateral leg and ankle disorder. As discussed above, the Board has reopened these claims upon a finding that new and material evidence has been received. However, as the RO has not adjudicated the merits of the service connection claims in the first instance, the Board must remand the claims so that this may be accomplished, as well as any additional development. See Hickson v. Shinseki, 23 Vet. App. 394 (2010). 

Regarding the Veteran's claim of service connection for headaches, the Veteran has raised the issue of whether his headaches are secondary/related to his service-connected facial scar; this secondary service connection theory of entitlement has not yet been adjudicated by VA. In addition, the Veteran was not provided adequate notice of the criteria for substantiating a secondary service connection claim; such notice should be provided on remand. See 38 C.F.R. § 3.310. 

The appellant has not been afforded a VA examination during this appeal. In light of the evidence of record, and the appellant's contentions that his disabilities are related to his service, the Board finds that examination should be accomplished on remand. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Finally, as these matters are being remanded anyway, if there are any pertinent, outstanding private or VA medical records pertaining to the issue on appeal, to include records from the Social Security Administration, there is a duty to obtain such records. See 38 C.F.R. § 3.159(c); Bell v. Derwinski, 2 Vet. App. 611 (1992); see also Golz v. Shinseki, 590 F.3d 1317, 1323 (Fed. Cir. 2010). 

Accordingly, the case is REMANDED for the following action:

1. The RO should send the Veteran appropriate VCAA notice on his claim of service connection for headaches, including as secondary to his service-connected facial scar. See 38 C.F.R. § 3.310. A copy of the notice letter, and any reply, should be included in the claims file. 

2. The RO should take all indicated action in order to obtain copies of any VA treatment records not on file pertaining to treatment for the claimed disabilities from the appropriate VA Medical Center from March 2012 to the present. 

3. The RO should take appropriate action to request all decisions and records, including medical records, associated with any claim for disability benefits filed by the Veteran with the Social Security Administration. 

4. For any private records, the RO must make at least two requests to any custodian in an effort to obtain such records, unless it is made evidence by the first request that a second request would be futile in obtaining such records. Any negative response should be in writing and associated with the claims file. 

5. After obtaining the above evidence, to the extent available, the RO should arrange for the Veteran to undergo an appropriate VA examination to determine the nature, onset and etiology of any low back disorder and/or bilateral leg and ankle disorder found to be present. The claims file should be made available to and reviewed by the examiner, and the examination report should reflect that such review was accomplished. All indicated studies should be performed, and all findings should be reported in detail. If a current disability of the lower back, leg or ankle is identified, the examiner should provide an opinion as to whether it is at least as likely as not (a degree of probability of 50 percent or higher) that any such lower back, leg and/or ankle disorder was incurred in service. 

A full explanation for any opinion provided should be expressed, and in doing so, the Veteran's documented medical history, as well as the history he reports, should be considered. The rationale for all opinions expressed must be set forth in a legible report. If an opinion cannot be provided without resort to mere speculation, the examiner must state this and must explain WHY the opinion cannot be provided without resort to mere speculation.

6. The RO should also arrange for the Veteran to undergo an appropriate VA examination to determine the nature, extent, onset and etiology of any chronic headache disorder found to be present. The claims file should be made available to and reviewed by the examiner. All indicated studies should be performed, and all findings should be reported in detail. 

The examiner should provide an opinion as to whether it is at least as likely as not (a degree of probability of 50 percent or more) that any diagnosed chronic headache disorder is related to or had its onset in service. 

If the examiner determines that any diagnosed chronic headache disorder is not directly related to the Veteran's active service, the examiner is asked to provide an opinion as to whether it is at least as likely as not that the chronic headache disorder is caused or aggravated by (permanently worsened) the Veteran's service-connected facial scar. In responding to this inquiry, the examiner should specifically address the October 2009 VA scar examination report and the diagnosis provided therein. Please note that in responding to this inquiry, the examiner must separately address the questions of causation and aggravation.

A full explanation for any opinion provided should be expressed, and in doing so, the Veteran's documented medical history, as well as the history he reports, should be expressly considered. The rationale for all opinions expressed must be set forth in a legible report. If an opinion cannot be provided without resort to mere speculation, this must be expressly stated and the examiner must explain WHY the opinion cannot be provided without resort to mere speculation.

7. Then readjudicate the appeal. If the benefits sought on appeal are not granted, issue the Veteran and his attorney a supplemental statement of the case and provide the Veteran an opportunity to respond. The case should then be returned to the Board, if in order, for further appellate review. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



______________________________________________
M. N. HYLAND
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs